UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMAL D. SCOTT, )
 )
    Plaintiff, )
 )
vs. ) Case No. 3:21-cv-01653-GCS
 )
KRISTOPHER THARP, STEPHEN )
RIDINGS, and RACHELLE BRAUN, )
 )
    Defendants. )

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' motion for summary judgment. (Doc. 63).[1] Plaintiff opposes the motion. (Doc. 66). Based on the reason delineated below, the Court **GRANTS** the motion for summary judgment.

On December 10, 2021, Plaintiff, Jamal Scott, an inmate in the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights at the Madison County, Illinois Jail. (Doc. 1). Plaintiff alleges that he saw Nurse Rachell Braun for complaints of sleep apnea on December 1, 2020. (Doc. 1). Nurse Braun told him that her husband had sleep apnea, and

---

[1]  On June 18, 2025, the Court filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required of Plaintiff in responding to a motion for summary judgment. (Doc. 65).

she was sure Plaintiff did not have it. He was placed on allergy medicine and a nasal spray.

Plaintiff submitted grievances on December 25 and 31, 2020, and January 1, 26, and 28, 2021, about his sleep apnea issues. He requested a sleep study and advised Nurse Braun and Capt. Ridings that the medication he had been given was not helping his sleep apnea.

Plaintiff saw a physician at Gateway Regional Medical Center on March 3, 2021, who advised him that the allergy medicine and nasal spray would not help his condition; he also needed a sleep study. Nurse Braun scheduled a sleep study for him on May 4, 2021. He had to sleep on a thin mat on the floor of a small attorney booth all night. Inmates are not supposed to sleep on the floor if they are not in a boat with a mat. The Madison County Jail has an infirmary that they only use for storage. He was charged $25 to sleep on the floor for the sleep study. He was diagnosed with obstructive severe sleep apnea.

On June 10, 2021, Officer Miller told Plaintiff that in accordance with instructions from Capt. Tharp, he would have to go to segregation or sleep on the floor to have a CPAP machine. Officers Miller and Griffin (n/k/a Huber) told him he would have to sign a refusal if he was not going to agree to sleep on the floor or go to segregation.

Plaintiff submitted a grievance on July 27, 2021, about chronic sleep apnea and the denial of access to the CPAP machine. He requested an extension cord during the night so he could use the CPAP machine. Capt. Ridings denied the grievance. Plaintiff submitted another grievance on August 12, 2021, complaining about being required to

sleep on the floor or having to go to segregation to use the CPAP machine. He again requested an extension cord, but Capt. Tharp denied the grievance.

Plaintiff saw Nurse Braun on August 22, 2021, for complaints of waking up during the night with tightness in his chest and feeling like he was having a heart attack. She reiterated that he would have to sleep on the floor to use the CPAP machine and that she was not surprised that it felt like he was having a heart attack.

On April 10, 2023, the Court conducted a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 20). Plaintiff was allowed to proceed with an Eighth or Fourteenth Amendment claim against Defendants Braun and Ridings for exhibiting deliberate indifference and/or acting objectively unreasonably and/or delaying medical treatment for Plaintiff's sleep apnea from December 2020 to March 2021 (Count 1) and an Eighth or Fourteenth Amendment claim against Defendants Braun, Ridings and Tharp for exhibiting deliberate indifference and/or acting objectively unreasonably in denying Plaintiff access to a CPAP machine for treatment for his sleep apnea and/or for requiring Plaintiff to endure unconstitutional conditions of confinement to use the CPAP machine (Count 2). (Doc. 20).

## UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Plaintiff was booked into the Madison County, Illinois jail on September 7, 2018. At the time of booking, Plaintiff had not been diagnosed with sleep apnea, and he did not

have an inhaler prescribed to him. Plaintiff contends that as a young child he was diagnosed with asthma and given an inhaler.

Between September 7, 2018, and December 1, 2020, Plaintiff did not submit any Sick Call Slips related to breathing difficulties. However, Plaintiff maintains that he verbally informed staff that he had asthma and sleep apnea.

On December 1, 2020, Plaintiff submitted a Sick Call Slip, reporting that his asthma was acting up and that he believed it was causing sleep apnea. That same day, Plaintiff saw Defendant Braun, who noted that Plaintiff had never undergone a sleep study, that he did not have an inhaler, and that his lungs were clear. At this time, the Nurse Practitioner was notified, and no new medical orders were issued. Plaintiff contends that also during this visit, Defendant Braun talked about how her husband thought he had sleep apnea and did not, and she told Plaintiff that she was sure he did not have sleep apnea either.

Thereafter, on December 25 and December 31, 2020, Plaintiff filed grievances complaining about a nurse visit, worsening sleep apnea, and having difficulty breathing at night. He requested copies of his sick call slips and grievances and asked again to be seen by medical. On December 31, 2020, Defendant Braun responded, stating Plaintiff's complaints had been reviewed with the Nurse Practitioner, no new orders were given, and Plaintiff would be scheduled to see the Nurse Practitioner. Defendant Braun mentioned that Plaintiff was treated with Claritin 10 mg and nasal spray.

On January 1, 2021, Plaintiff submitted another grievance to Defendant Ridings and Defendant Braun stating his doctor at Windsor Medical Building thought Plaintiff

may have sleep apnea based on his reported symptoms. However, Plaintiff was unable to complete a sleep study because he was booked in the Madison County jail before the scheduled study.

On January 5, 2021, the Nurse Practitioner saw Plaintiff. During this visit, Plaintiff was provided with allergy medication and nasal spray, and he underwent a chest X-ray. On January 10, 2021, Defendant Braun responded to Plaintiff's grievance dated January 1, 2021, stating that Plaintiff was seen by the Nurse Practitioner on January 5, 2021, and Plaintiff's medical records had been requested from Windsor Medical Group. On January 16, 2021, Plaintiff submitted another Sick Call Slip requesting a COVID-19 test and complaining that the Claritin and nasal spray were not helping his sleep apnea in that he was waking up choking. He also noted that he had stopped breathing in his sleep.

Subsequently, Plaintiff filed grievances on January 26, and 28, 2021, reporting episodes of stopped breathing and ineffective treatment. Defendant Braun responded to this grievance on February 11, 2021, advising Plaintiff to submit Sick Call Slips if he felt unwell.

Madison County Jail received Plaintiff's medical records from Windsor Medical on February 26, 2021. On March 2, 2021, Madison County Jail referred Plaintiff to a pulmonologist for a sleep apnea evaluation. Plaintiff was scheduled for an appointment on April 15, 2021, with a pulmonologist at the Gateway Pulmonology Department ("Gateway") to evaluate Plaintiff for sleep apnea.

Gateway ordered a home sleep study and instructed the sleep lab to contact the nurse at Madison County Jail to arrange testing. Plaintiff completed the sleep study on

May 4, 2021, while sleeping on the floor of an attorney booth at the Madison County Jail. Because of the seriousness of Plaintiff's charges, Madison County Jail did not allow Plaintiff to spend the night at the sleep clinic. Plaintiff contends that he should not have had to sleep on the floor as Madison County Jail has an infirmary.

Gateway diagnosed Plaintiff with obstructive sleep apnea and recommended an in-lab titration study. On May 19, and 25, 2021, Madison County Jail coordinated with Gateway to arrange the titration study.

On June 4, 2021, pursuant to Gateway's recommendation, Madison County Jail ordered CPAP titration for Plaintiff. Madison County Jail received a CPAP machine for Plaintiff. On June 10, 2021, Plaintiff refused the CPAP treatment. Because Plaintiff's cell lacked electrical outlets, Plaintiff was told he would need to sleep on the floor in the dayroom or sleep in a segregation cell so that the CPAP machine could be plugged in while he slept. Plaintiff refused these accommodations. Plaintiff maintains he was coerced to sign the refusal form, and it was a violation of his rights to make him sleep on the floor or go to segregation for the rest of his time at Madison County Jail.

On July 27, 2021, Plaintiff filed a grievance requesting an extension cord to use the CPAP machine from his cell. The next day, Defendant Ridings responded to the grievance informing Plaintiff that an extension cord cannot be run down the block to his cell, citing safety and security risks.

On August 12, 2021, Plaintiff submitted a grievance complaining about being required to sleep on the floor or go to segregation to use the CPAP machine. On August 13, 2021, Defendant Tharp responded to Plaintiff's grievance, stating in part, that several

accommodations had been offered to Plaintiff to use the CPAP machine, but that Plaintiff refused the accommodations. Plaintiff stated that he did not want CPAP therapy if it required him to sleep on the floor in the dayroom or go to segregation. Plaintiff never changed his position while he was detained at Madison County Jail.

During his deposition, Plaintiff admitted he had no criticism of either Defendant Braun or Defendant Ridings. He also acknowledged that Defendant Braun did not deny him the CPAP machine. Further, Plaintiff has not been diagnosed with depression. However, he testified that he feared for his life if he sleeps.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a

plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn Law Firm, S.C., 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

DISCUSSION

A.     **Serious Medical Needs Claim**

A pretrial detainee's unconstitutional medical care claim, brought under the Due Process Clause of the Fourteenth Amendment, is analyzed according to the objective unreasonableness inquiry laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). See *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). A defendant violates a pretrial detainee's due process right to constitutionally acceptable medical care if:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353−354). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively— without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (internal quotation marks and citation omitted).

First, the parties do not dispute that sleep apnea treatment is an objectively serious medical need. Thus, the Court focuses on whether Defendants Braun and Ridings provided inadequate care to Plaintiff. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not produced evidence that Defendants Braun and Ridings failed to provide him with proper medical treatment. In fact, the

record reveals that Plaintiff was provided appropriate medical treatment; the medical treatment simply was not the treatment Plaintiff wanted or demanded at the time.

Plaintiff's grievances regarding his sleep apnea were promptly and appropriately addressed. Specifically, the record reflects that Plaintiff filed Sick Call Slips and grievances starting on December 1, 2020. That same day, Plaintiff was promptly seen by Defendant Braun, and she noted that Plaintiff had never had a sleep study, did not have an inhaler, and had clear lungs. Defendant Braun also spoke to the Madison County Jail Nurse Practitioner about Plaintiff and no new orders were given at that time. Thereafter, Plaintiff filed two more grievances at the end of December 2020, which Defendant Braun responded to on December 31, 2020. In her response, Defendant Braun noted that the complaints had been reviewed with the Nurse Practitioner, that no new orders were given, and that Plaintiff would be scheduled to see the Nurse Practitioner. She also mentioned that Plaintiff was treated with Claritin 10mg and nasal spray. Afterward, Plaintiff submitted another grievance on January 1, 2021, stating that a previous doctor thought he may have sleep apnea. In response to this grievance, Defendant Braun noted Plaintiff saw the Nurse Practitioner on January 5, 2021, underwent a chest x-ray, and was provided allergy medicine and nasal spray. Plaintiff's medical records were also requested from the previous doctor.

On January 16, 2021, Plaintiff submitted another Sick Call Slip regarding a COVID-19 test and complained that the allergy medication and nasal spray were not working. He also noted he was waking up choking and his breathing had stopped in his sleep. Subsequently, Plaintiff filed two more grievances at the end of January 2021, reporting

episodes of stopped breathing and ineffective treatment. On February 11, 2021, Defendant Braun responded to the grievances. Madison County Jail received Plaintiff's outside medical records on February 26, 2021. On March 2, 2021, Madison County Jail referred Plaintiff to a pulmonologist for a sleep apnea evaluation. Plaintiff was the scheduled for an appointment on April 15, 2021.

Clearly, Defendants' care of Plaintiff's sleep apnea was timely, continuous, and appropriate as it included a referral to a pulmonologist. Ultimately, Plaintiff underwent a sleep study and was offered a CPAP machine for the treatment of his sleep apnea. Despite Defendant Braun's alleged dismissive comment about her husband's sleep apnea and that she did not think that Plaintiff had sleep apnea, the evidence shows that Defendants properly monitored and treated Plaintiff's condition. Simply put, there is no evidence that Defendants were objectively unreasonable in their care of Plaintiff from December 2020 to March 2021. Accordingly, the Court grants the motion for summary judgment on Count 1.

**B.    Conditions of Confinement Claim**

Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are also analyzed under an objective standard. *See Hardeman v. Curran*, 933 F.3d 816, 821−822 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or

recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, No. 20-2653, 853 Fed. Appx. 25, 27 (7th Cir. July 13, 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda*, 900 F.3d at 353–354).

After viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could not infer that any of the Defendants' responses/conduct regarding Plaintiff's use/access of the CPAP machine were objectively unreasonable. The Madison County Jail obtained the CPAP machine in June 2021, and Defendants provided Plaintiff with continual access to the CPAP machine. When the CPAP machine arrived, Plaintiff was informed that he would have to sleep in the dayroom on the floor with his mat or in segregation due to the lack of electrical outlets in his cell. Plaintiff immediately refused treatment with the CPAP under these circumstances. Thereafter, Plaintiff requested that an extension cord be run from the dayroom to his cell. Plaintiff's request was denied for security reasons as extension cords across blocks presented a safety and security risk. Defendants' actions were reasonable in that Plaintiff was provided with two different locations/options to use the CPAP machine. Further, Plaintiff's refusal to use the CPAP machine in either of these locations undermines his claim that he was denied access to the CPAP machine. Finally, Plaintiff was not required to endure unconstitutional conditions to use the CPAP machine. Accordingly, Defendants are entitled to summary judgment on Count 2.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 63). The Court **FINDS** in favor of Defendants Kristopher Tharp, Stephen Ridings and

Rachelle Braun and against Plaintiff Jamal D. Scott. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court informs Plaintiff as follows. Plaintiff has two means of contesting this order: he may either request this Court review this order, or he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review the order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) why the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time

for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

In contrast, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days. See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C).

**IT IS SO ORDERED.**

**DATED: February 4, 2026.**

Digitally signed by Judge Sison
Date: 2026.02.04 14:33:41 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**